**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JAMES M. MCDONALD II, as Trustee and** | ) | |
| **sole beneficiary of the WALTER MIDDLETON** | ) | |
| **& COMPANY RETIREMENT PLAN and** | ) | |
| **WALTER MIDDLETON & COMPANY** | ) | |
| **FROZEN RETIREMENT PLAN** | ) | |
| **Plaintiffs,** | ) | **No. 04 C 0334** |
| | ) | |
| **v.** | ) | **Judge Manning** |
| | ) | **Magistrate Judge Nolan** |
| **ESTATE OF JOSEPH W. GAYTON and** | ) | |
| **MONICA M. GAYTON** | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM AND ORDER**</u>

Plaintiff James M. Macdonald II, as Trustee and sole beneficiary of the Walter Middleton

& Company Retirement Plan and Walter Middleton & Company Frozen Retirement Plan

("MacDonald"), alleges that Joseph Gayton ("Joseph"), fraudulently transferred property to

defendant Monica Gayton ("Monica") in violation of the Illinois Uniform Fraudulent Transfer

Act, 740 ILCS 160/1 *et seq.* ("UFTA").  Monica seeks summary judgment pursuant to Federal

Rule of Civil Procedure 56.  For the following reasons, the motion is granted.

**I.      BACKGROUND**

The facts of this case are not in dispute.  MacDonald loaned Joseph $325,000 at some

point prior to February 2, 2001.  At least seven years prior to February 2, 2001, Joseph and

Monica owned real estate located at 3524 Riverside Drive, Wilmette, Illinois ("Wilmette home")

as joint tenants.  On February 2, 2001, Joseph executed a quitclaim deed conveying his interest in

the Wilmette home to Monica.  The parties agree that both Monica and Joseph, as well as the

attorney who prepared the quitclaim deed, were aware that Joseph was indebted to MacDonald prior to preparation and execution of the quitclaim deed. Shortly thereafter, on March 15, 2001, the February 2, 2001, conveyance was recorded with the Recorder of Deeds.

On August 7, 2003, Macdonald filed suit against Joseph in the United States District Court for the Northern District of Illinois, Eastern Division, Case No. 03 C 5483, alleging breaches of certain notes. Joseph died on November 26, 2003. MacDonald did not perfect or record a judgment lien against the Wilmette home prior to Joseph's death. However, on December 22, 2003, in case no. 03 C 5483, the court entered judgment *nunc pro tunc* as of October 28, 2003, in favor of Macdonald and against Joseph in the amount of $357,139.89. MacDonald never obtained a judgment against Monica.

MacDonald then filed the instant action seeking to avoid the transfer of the Wilmette home to Monica under the Illinois Uniform Fraudulent Transfer Act so that he could then levy on the Wilmette home to satisfy the judgment against Joseph. Monica has moved for summary judgment.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the "pleadings, depositions, answer to interrogatories, and admissions on files, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c)*; Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.,* 970 F.2d 363, 365 (7th Cir. 1992). Further, a court should grant summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Id.*

## III.    ANALYSIS

Monica contends that even if the transfer was fraudulent under section 5 of the UFTA (which she denies), MacDonald cannot obtain the relief he seeks.  Specifically, Monica argues that MacDonald could not have perfected a lien on the Wilmette home with respect to the judgment against Joseph because he did not have an interest in the Wilmette home at the time that MacDonald obtained the judgment against him.

A judgment against an individual is not automatically deemed a lien against the judgment debtor's real property until the judgment creditor perfects a lien on the judgment debtor's real property pursuant to the method required by the Illinois Code of Civil Procedure.  735 ILCS 5/12-101.  Section 5/12-101 of the Illinois Code of Civil Procedure requires a judgment debtor to file the judgment in the office of the recorder of deeds in the county in which the real estate is located.  *Casey National Bank v. Roan,* 668 N.E.2d 608, 612 (Ill. App. Ct. 1996).  Thus, in order for MacDonald to perfect a lien on the Wilmette home, he must have recorded a judgment lien against the Wilmette home during the period in which Joseph had an interest in the home.

Given that Joseph conveyed the Wilmette home to his wife on February 2, 2001, Joseph had no interest in the property on the date of the October 28, 2003 judgment.  Because a party may only attach a lien as to property *possessed* by a judgment creditor at the time the judgment is entered, MacDonald has no lien on the property as to Joseph. *MacDonald v. Gayton*, 04 C 334, docket no. 13, (N.D. Ill. Sept. 17, 2004) (denying petitioner's motion to intervene because "at the time [petitioner] filed his lien against Mr. Gayton's interest in the Wilmette home, Mrs. Gayton was the sole owner of the property.  This means that the lien is invalid under Illinois law since at the time it came into existence, Mr. Gayton had no interest in the Wilmette property.") (citations

omitted).[1]  Indeed, no lien can exist even if the alleged fraudulent transfer were set aside because the transfer of the property as between Joseph and his wife is valid.  *DeMartini v. DeMartini*, 52 N.E.2d 138, 140 (Ill. 1943) ("it is well established that a transfer of property fraudulent and void as to creditors *is nevertheless valid as between the parties thereto*.") (emphasis added).

MacDonald acknowledges that he does not have a lien and states "[a]lthough the cases may state that MacDonald does not have a lien at this point, they do not prohibit him from pursuing the cause of action under the UFTA."  Resp. at 4.  MacDonald argues that even if the transfer is intact as between Monica and Joseph, the property can still be used to satisfy the judgment against Joseph, assuming MacDonald can prove that the fraudulent transfer occurred.  Specifically, MacDonald states that the UFTA "allows this Court to enter a judgment against the 'first transferee', in this case Defendant Monica Gayton.  MacDonald would be allowed to recover either the property itself or its cash value in satisfaction of the debt."  Resp. at 6 (citations omitted).

Under the UFTA, "[e]xcept as otherwise provided in this Section, to the extent a transfer is voidable in an action by a creditor under paragraph (1) of subsection (a) of Section 8, the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c), or the amount necessary to satisfy the creditor's claim, whichever is less."  740 ILCS 160/9(b).  Further, "the judgment may be entered against: (1) the first transferee of the asset or the person for whose benefit the transfer was made."  740 ILCS 160/9(b)(1).

---

[1]Moreover, MacDonald admitted in a response brief to an earlier motion to intervene that Gayton ceased to have an interest in the Wilmette home after February 2, 2001.  *See* Plaintiff's Response to Louis Kovanda's Motion to Intervene and Removal filed August 5, 2004 ("Since Joseph Gayton had no interest in the property located at 3524 Riverside Drive, Wilmette, Illinois, after February 2, 2001, Kovanda's judgment lien recorded on December 3, 2003 is not valid.")

However, an Illinois court addressing a similar fraudulent transfer claim, has stated:

> Moreover, apart from the dismissal [on statute of limitations grounds], the Company's [fraudulent transfer] claim is moot because the company alleges that Nick, as a joint tenant, fraudulently transferred his interest to the other joint tenant, his wife, and then he died. Assuming the Company was successful on the merits of its claim for fraudulent transfer, the court would reinstate the property as it was at the time prior to the fraudulent transfer. *Because Nick's death occurred prior to any judgment received by the Company, the property would have transferred to the surviving joint tenant at that time of death, extinguishing any rights the Company may have had.*

*Gilbert Bros. v. Gilbert*, 630 N.E.2d 189, 192-93 (Ill. App. Ct. 1994) (emphasis added).

MacDonald makes much of the fact that the judgment in his favor was entered *nunc pro tunc* as of October 28, 2003 (i.e., prior to Joseph's death). However, the fact that the judge entered the judgment order *nunc pro tunc* did nothing to help MacDonald as he did not record the lien prior to Joseph's death. At the time of Joseph's death, regardless of whether the prior transfer was fraudulent or not, the property passed to Monica. MacDonald has not cited to any authority for the proposition that a judgment order entered *nunc pro tunc* prior to a judgment debtor's death also somehow simultaneously creates a recorded lien *nunc pro tunc*.

Because MacDonald cannot obtain relief under the UFTA, defendant's motion for summary judgment is granted.

## IV. CONCLUSION

For the reasons stated above, the court grants Monica's motion for summary judgment [33-1].

**ENTER:**

_____
**Blanche M. Manning**
**United States District Judge**

**DATE:** August 30, 2005